Clarence P. Bicha and Rosemary F. Bicha v. Commissioner.
Bicha v. Commissioner
Docket No. 3918-68.
United States Tax Court
T.C. Memo 1969-88; 1969 Tax Ct. Memo LEXIS 207; 28 T.C.M. (CCH) 491; T.C.M. (RIA) 69088; May 6, 1969, Filed Clarence P. Bicha and Rosemary F. Bicha, pro se, 7820 Altamont St., Spokane, Wash. Lee A. Kamp, for the respondent. SCOTT Memorandum Opinion SCOTT, Judge: Respondent determined a statutory deficiency in petitioners' income tax for the calendar year 1966 in the amount of $132.83. [1]
The only issue for decision is whether petitioners realized a capital gain or sustained a deductible loss upon receipt in reimbursement for lost cattle of an amount less than the market value but more than petitioners' basis in the cattle. All of the facts have been stipulated and are *208 found accordingly. Petitioners, husband and wife who resided at the time their petition in this case was filed in Spokane, Washington, filed a joint Federal income tax return for the calendar year 1966, reporting their income and deductions as they had done in prior years on a cash basis. Attached to their return for the year 1966 was schedule F, Schedule of Farm Income and Expenses on which they claimed a "Loss on Breeding Stock" of $743.05. Petitioners in May of 1965 placed the following cattle in a rental pasture: One 5-year-old cow (Gladys) for which they had paid $212 and with respect to which they had previously had allowed or allowable depreciation of $56, 4 cows (2 of which were 2-year olds and 2 of which were 3-year olds) which they had raised and kept as breeding stock, and 3 calves. On August 24, 1965, petitioners discovered the cattle were missing and began a search for them. In pursuing their search for the cattle petitioners spent $19.05 for advertising and $94 for gasoline. Petitioners were unable to locate the cattle and commenced an action against the owner of the pasture for the market value of the missing cattle plus pasture costs. The fair market value of *209 the 5 cows at the time petitioners discovered that they were missing was $1,000 and the fair market value of the 3 calves was $300. The cattle were all properly branded. It is unusual for properly branded cattle put into a rental pasture in Montana to disappear. In 1966 petitioners' suit against the owner of the pasture was settled by the entry of an agreed judgment awarding petitioners $650. The judgment provided in part: Provided, however, that if some or all of the cattle described in the Complaint are reclaimed, the same shall be sold, and the first $650.00 realized therefrom shall be paid to defendants. Petitioners paid an attorney fee of $280 in connection with their suit against the owner of the pasture. None of the cattle lost by petitioners have ever been found or returned. The "Loss of Breeding Stock" of $743.05 claimed by petitioners on their 1966 Federal income tax return was computed by adding to the $1,000 value of the five cows expenses of $393.05 paid for advertising, gasoline, and attorney's fee and subtracting from the resultant $1,393.05 the amount of $650 partial recovery by Court action. Respondent in his notice of deficiency disallowed the claimed loss *210 and computed a taxable capital gain of $50.47 which he arrived at by subtracting from the $650 recovery by petitioners the sum of the $395.05 of expenses and attorney's fee and the $156.00 cost to petitioners of Gladys less depreciation and considering the remaining $100.95 to represent long-term capital gain, one-half of which was taxable to petitioners. 492 Petitioners do not question the fact that the $650 they received from their Court action less the cost of making the recovery is properly includable in their income as a partial substitute for what might have been received had they sold their cows. It is their position that since the amount was less than the value of the cows they sustained a loss. [2]
Respondent also in effect considered the $650 to be a substitute for the sales price for the cows. Since the cows were breeding cattle, respondent considered a capital gain to result from the excess of the $650 over petitioner's basis in the cows plus expenses in attempting to recover them or their value. Respondent *211 contends that petitioners had no basis in the cows they had raised since they had in prior years deducted all the costs of raising the cows. Respondent argues that had petitioners made no recovery on their livestock, no loss for these cows would be allowable under the provisions of section 1.165-6(d)(1) of respondent's Income Tax Regs. [3] Had petitioners made no recovery with respect to the lost cattle, respondent would have considered the deduction for the loss of Gladys to be petitioners' unrecovered basis of Gladys of $156 which was the cost to petitioners of Gladys less depreciation sustained on Gladys. This is in accordance with section 1.165-6(d)(2) and section 1.165-1(c)(1) of respondent's income tax regulations. [4]
*212 We agree with respondent that absent any recovery for the cattle petitioners would be entitled to no loss deduction for the cattle they had raised. They had in previous years deducted the amounts expended in raising these cattle. A taxpayer is only entitled to one deduction for an expenditure. We also agree with respondent that had petitioners had no recovery for their cattle they would have been entitled to deduct only their basis of $156 for Gladys. Daniel G. Tenney, 42 B.T.A. 1049 (1940). Since petitioners had not previously deducted the costs of searching for the cattle and the attorney's fee in recovering the judgment, these amounts are properly deductible either as a part of the basis of the cattle or as an expense. Respondent treated the amount of these expenses as part of the basis of the cattle and petitioners do not object to this treatment but object only to not treating the balance of the basis as the $1,000 fair market value of the cattle at the time they disappeared. Had petitioners found and sold the cattle for $1,000, they would have had a gain of $844 less their expenses of searching for the cattle. This gain would have been taxable to the extent *213 of one-half thereof as long-term capital gain on the sale of breeding cattle. Petitioners have not reported or paid tax on any such gain since they did not sell the cattle for $1,000. However, they, in effect, although very unwillingly, sold the cattle for the $650 they received to partially compensate for the loss of the cattle. Therefore respondent is correct in his determination that petitioners sustained no loss on the disappearance of their cattle but rather had a long-term capital gain of $50.47. Decision will be entered for respondent. Footnotes
1. Because of an unrefunded prepayment credit of $154.43, respondent's determination is shown in the notice of deficiency to result in an overassessment of $21.60.↩
2. Apparently petitioners claim no loss on the calves and respondent has also apparently considered the entire $650 to relate to the breeding cattle.↩
3. Income Tax Regs., Sec. 1.165-6(d) Loss of livestock - (1) Raised stock. A taxpayer engaged in the business of raising and selling livestock, such as cattle, sheep, or horses, may not deduct as a loss under section 165(a) the value of animals that perish from among those which were raised on the farm. (2) Purchased stock. The loss sustained upon the death by disease, exposure, or injury of any livestock purchased and used in the trade or business of farming shall be allowed as a deduction under section 165(a). * * * ↩
4. Income Tax Regs., Sec. 1.165-1(c)↩ Amount deductible. (1) The amount of loss allowable as a deduction under section 165(a) shall 1.1011-1 as the adjusted basis for determining the loss from the sale or other disposition of the property involved. * * *